WILLIAM KESWICK and Others, Composing the Firm of JARDINE, MATHESON AND COMPANY, Respondents, *v.* EDWARD RAFTER, Appellant.

*An order which directs a.purchase to be made of merchandise and is not itself a purchase — refusal to accept on one ground waives another objection not made — shipment of goods in two parcels.*

In an action brought to recover damages for a loss sustained by the plaintiffs, because of the refusal of the defendant to accept a consignment of tea alleged to have been purchased by the plaintiffs for the defendant in China, it appeared that the plaintiffs wrote the following letter to certain tea brokers: " We would like to have you make the following offer to Mr. Edward Rafter (the defendant), 4000⁄5000 Superior Formosa Oolong at 21½ c., C. F. & I. Suez. Mr. Leyburn especially states that .this is the best parcel offering and that it will not be replaced." That in answer to this the defendant sent the following communication to the plaintiffs : "I will give 21c., C. F. & I., for the 4000 ⁄5000 block Superior Formosa Oolong via Suez Canal, recommended by Mr. Leyburn to me," and that replying to this letter the plaintiffs wrote to the defendant: "We beg to confirm our verbal message of this A. M. conveyed through Mr. C. W. Beebe to the effect that we thought we could buy the parcel of 4000⁄5000 pkgs. Superior Formosas previously offered you at 21¼c., and have your reply that you will accept the same at 21c., for which we thank you, and we are cabling to-night as per inclosed memo."

The memorandum inclosed stated that the cable message which the plaintiffs had sent to China was as follows: "For account Ed. Rafter we offer you 21c. for parcel of 4000/5000 Super. Formosa Oolong, or less if you cannot get as many." This letter also stated the amount of the cable charges, which amount the defendant paid to the plaintiffs' representative.

Upon the trial evidence was given to the effect that contracts of the nature of the one in question were familiar to the trade, as being contracts whereby teas were to be purchased for the defendant in China and shipped to New York, the defendant paying the purchase price, freight, commissions, insurance and expenses incurred by the plaintiffs, upon the condition, however, that the total amount to be paid should not exceed the price named per pound. It also appeared that the defendant had made several purchases through the plaintiffs on orders similar to the one in question, where he had paid, not the price specified, but the purchase price for the tea in China, with freight, insurance, commission and expenses added.

*Held,* that the correspondence between the parties, as explained by the evidence, showed that the contract was an order for the plaintiffs to purchase the tea for the defendant in China and not a sale of tea by the plaintiffs to the defendant, and that the plaintiffs, being the agents of the defendant, were entitled to recover the expenses incurred in carrying out such order, provided they followed his instructions;

That the objection that the plaintiffs had not shipped the tea via the Suez canal, as directed by the defendant, but had shipped part of it by the overland route, was not available to the defendant, it appearing that he predicated his refusal to accept the tea upon the fact that it was not up to grade, and that he failed to object at once upon receiving notice of the deviation from the route;

That the fact that the tea was shipped in two lots did not justify the defendant in refusing to accept it, there being nothing in the instructions given to the plaintiffs which required them to ship it in one vessel or one parcel.

Appeal by the defendant, Edward Rafter, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 24th day of June, 1897, upon the verdict of a jury, and also from an order entered in said clerk's office on the 21st day of June, 1897, denying the defendant's motion for a new trial made upon the minutes.

*George E. Blackwell,* for the appellant.

*John Winthrop Fiske,* for the respondents.

Ingraham, J.:

The action was brought to recover the loss sustained by the plaintiffs, because of the refusal of the defendant to accept a consignment of tea purchased by plaintiffs for the defendant in China.

The ground assigned by the defendant for his refusal to accept the tea was, that it was not up to the grade required by the contract or order. That question was sharply litigated upon the trial, and the case was submitted to the jury by the learned judge who tried the case, with the instruction that, unless they found that the tea was of the grade required by the order or contract, they must find a verdict for the defendant. The tea was graded in China before it was shipped and again upon its arrival in this country by experts whose qualifications were not disputed by the defendant. The evidence was amply sufficient to sustain the verdict that the tea was fully up to the grade described in the order, and we think the verdict of the jury disposes of that question.

The appellant contends that the contract in question was a sale of tea by the plaintiffs to the defendant and not an order of the defendant's to the plaintiffs to purchase for him a certain lot of teas in China. We do not see how this would help the defendant. If, as he contends, there was a sale of the tea by the plaintiffs, the price that he was bound to pay was twenty-one cents a pound, while it appears from the evidence and was not disputed that the cost of the tea to the defendant, if he had accepted it, paying the drafts drawn against him therefor, would have been a little under twenty cents a pound, and the amount of the verdict was based upon the latter figure, as being what the plaintiffs were entitled to receive from the defendant for the tea. If there was a sale of the tea by the plaintiffs to the defendant, the defendant would have been indebted to the plaintiffs more than one cent a pound in addition to the amount of the verdict. We think, however, that the contract was not a sale by the plaintiffs to the defendant, but an order for the purchase of these teas in China by the plaintiffs as the agents of the defendant.

The contract is evidenced by certain letters, the first being a letter from the plaintiffs to Messrs. Beebe Brothers, tea brokers, as follows: " We would like to have you make the following offer to Mr. Edward Rafter, 4000/5000 Superior Formosa Oolong at 21½c., C. F. & I. Suez. Mr. Leyburn especially states that this is the best parcel offering and that it will not be replaced." In answer to this and on the 26th of October, 1893, the defendant sent a communication to the plaintiffs, as follows: "I will give 21c., C. F. & I., for the 4000/5000 block Superior Formosa Oolong via Suez Canal, recom-

mended by Mr. Leyburn to me." In reply to this letter and on the same day the plaintiffs wrote to the defendant: "We beg to confirm our verbal message of this A. M. conveyed through Mr. C. W. Beebe to the effect that we thought we could buy the parcel of 4000/5000 pkgs. Superior Formosas previously offered you at 21½c., and have your reply that you will accept same at 21c., for which we thank you, and we are cabling to-night as per enclosed memo." There was inclosed a memorandum which stated that the cable that they had sent to China was as follows : "For account Ed. Rafter we offer you 21c. for parcel of 4000/5000 Super. Formosa Oolong, or less if you cannot get as many." This letter also contained the statement that the cost of the cable was thirteen dollars and seventy-two cents, which amount the defendant paid the plaintiffs' representative in New York.

Contracts of this nature seem to have been familiar to the trade in New York, and it was so testified to. They were explained by a witness for the plaintiffs as being contracts whereby the teas were to be purchased for the defendant in China and shipped to New York, the defendant paying the purchase price, freight, commissions, insurance and expenses incurred by the plaintiffs, upon the condition, however, that the total amount to be paid should not exceed the price named per pound. This testimony was not contradicted by the defendant nor by any testimony produced in his behalf. It was also in evidence that the defendant had made several purchases through the plaintiffs on like orders previous to the transaction in question, where he had paid, not the price specified, but the purchase price for the tea in China, with freight, insurance, commission and expenses added. Neither in the offer by the plaintiffs to the defendant, nor in the reply of the defendant, is there any statement that the plaintiffs are to sell the teas to the defendant, nor does the defendant in his reply, in which he expresses his willingness to purchase the goods at the price named, offer to buy them from the plaintiffs. The original offer states that a Mr. Leyburn, who appears to have been the plaintiffs' representative at Amoy, China, states "that this is the best parcel offering, and that it will not be replaced." And the defendant in his reply says: "I will give 21c., C. F. & I., for the 4000/5000 block Superior Formosa Oolong, via Suez Canal, recommended by Mr. Leyburn to me." In reply the plaintiffs do

not accept this counter-offer of the defendant or agree to sell to him the teas at the price named, but state that they thought they could buy the parcel at twenty-one and one-half cents, and, having the defendant's offer, have cabled their representative in China that such offer was twenty-one cents a pound for the parcel of 4000/5000 Formosa Oolong, " or less if you cannot get as many." The contents of the cable was communicated to the defendant on the same day, and to it he made no objection, but, on the contrary, ratified it by paying to the plaintiff the cost of the cable, which would be most inappropriate if there was a contract for a sale to the defendant of the teas in question. Thus, the correspondence between the parties, explained as it was by the evidence of the broker who made the contracts and prepared the offer made by the defendant, shows that a contract of this kind was an order for the plaintiffs to purchase the tea for the defendant in China. The plaintiffs, thus being the agents of the defendant for the purchase of this tea, were entitled to recover the cost they were put to in carrying out the order given by the defendant, provided that they followed his instructions. Acting under the authority thus given, the plaintiffs purchased the tea, and the evidence is that, when they came to ship it, there was no available means by which it could all be shipped by the Suez canal, and the plaintiffs' representative in China shipped part of it by what is called the overland route, which is from China to San Francisco, and then by rail to New York. The balance of the tea was sent by steamer via Suez canal. The reason for this change was stated in the testimony. The freight, by what is called the overland route, is usually higher than that by the Suez canal, but at this particular time a shipment by the overland route was more advantageous, and it further appears that the trade shipped by the overland route, if possible, when the cost was not greater. The deviation made by the plaintiffs' representative in China was made in the interest of the defendant, to save freight and insure the prompt arrival in New York. The evidence is that this was accomplished. The fact that a portion of the tea was shipped by the overland route was promptly communicated to the defendant to which he made no objection, and when he did object to the tea, he did so upon the sole ground, as the evidence quite clearly shows, that the tea that arrived was not up to the grade. Whether or not

the defendant could have objected to the teas upon the ground that the agent had departed from his instruction in shipping it by the overland route, although it was shown that it was more to his advantage so to ship them, it is not necessary for us to determine as he took no such objection, his objection being based solely upon the ground that the teas were not up to grade. And it is quite clear that if such an objection was available, it was waived by defendant's failing to object at once when notice of the deviation of the route was given, and by basing his objection to the tea when it arrived solely upon the ground that it were not up to grade. Nor does the fact that the tea came in two lots, and that the first lot was rejected before the second arrived, relieve the defendant from liability. As before stated, the plaintiffs were acting as the brokers or agents of the defendants in procuring the shipment of these teas for him. When they purchased the tea the title to it vested in the defendant if it was of the grade specified in the order given. There was nothing in the instructions given to the plaintiffs which required the tea to be shipped in one vessel or one parcel, or justified the defendant in refusing it because it was shipped in more than one parcel. They were instructed to purchase for him the lot of tea and ship via Suez canal. A portion of the goods arrived in New York and was offered to the defendant and he refused to accept them, specifying an objection that did not justify him in refusing them. The plaintiffs had a lien upon the goods for their advances and charges, and no rule of law required that they should hold the goods until the rest of the parcel purchased should arrive. The defendant having absolutely and unqualifiedly refused to accept the first lot when they arrived, not because they were brought by a different route from that suggested by the defendant, or because he could not tell whether he would accept them or not until the whole lot arrived, but because this particular lot which was then ready for delivery was not up to the grade; nothing required these plaintiffs to continue to hold the goods and run the risk of a declining market, and we think that they were justified in disposing of the goods on the best terms that they could, and holding the defendant for any deficiency, if it subsequently appeared that the goods were up to the grade ordered by the defendant. Assuming that he had the

right to refuse the first shipment until the whole amount ordered had arrived, he had long before been informed that the balance of these goods had been shipped, the name of the vessel being given, and he must have known or could easily have ascertained the probable date of its arrival. He was not justified in absolutely refusing to accept the teas tendered, and throwing upon the plaintiffs the responsibility of holding them subject to the fluctuations of the market, for the reason that he gave. It is important to note that the defendant has never retracted his refusal to receive the goods, and when the second lot was tendered to him they were refused upon the same ground, namely, that they were not up to the grade required by his order. He did not thus offer to accept the whole parcel ordered by him or pay for them according to his contract, nor did he ever retract his refusal of acceptance or base his refusal upon any other ground except the one already given, that the goods were not up to the grade. In the view that we have taken of the contract it does not appear that the defendant was entitled to have the entire lot of tea purchased tendered to him at any particular time. The plaintiffs were not selling the tea to defendant in one lot, which they were bound to deliver to him at one particular time, but were acting for him in the purchase of the tea; and nothing in the instructions given prevented the plaintiffs from shipping, as before stated, in several distinct shipments. We think, therefore, that upon the finding of the jury that the tea was of the grade ordered, the plaintiffs were entitled to recover.

We have examined the exceptions taken to the charge and to the admissions and objections of testimony and do not find that they were of any importance upon the real question involved in this action. None of them would justify a reversal of the judgment.

We think, for the reason stated, that the judgment and order were right and should be affirmed, with costs.

VAN BRUNT, P. J., RUMSEY and McLAUGHLIN, JJ., concurred.

Judgment and order affirmed, with costs.