Commonwealth Title Insurance and Trust Company, Executor under last will and testament of George J. Roesch, Deceased, Appellant, v. William L. Gregson, trading as W. L. Gregson & Company, Appellee.

## Gen. No. 26,394.

1. SALES—*when title passes to goods bought for export.* Under a contract for the sale of barreled beef, f. o. b. Philadelphia for export shipment, where there was no undertaking by the seller to furnish a through export bill of lading or to prepay freight charges, title to the goods passed upon their segregation and delivery to a railroad for transportation at Philadelphia.

2. SALES—*when title passes.* Title passes from the vendor to the vendee when nothing remains to be done by the former under the contract of sale.

3. SALES—*discretion of seller as to shipping instructions.* Where final shipping instructions did not reach the seller until the 14th of the month and the buyer insisted that the goods be shipped by the 15th in order to reach New York by the 19th for shipment abroad, and the railroad refused to give a through bill of lading to the foreign destination, the acceptance of a domestic bill of lading was a reasonable exercise of the discretion necessarily vested in the seller under the circumstances.

4. SALES—*acquiescence of purchaser in shipping arrangements.* Where a purchaser of goods for export was notified that the railroad would give only a domestic bill of lading and made no objection, he thereby acquiesced in the arrangement and could not thereafter urge the failure to take out a through export bill of lading as a ground for denying that title passed upon delivery to the carrier.

Commonwealth Title Ins. & Trust Co. v. Gregson, 223 Ill. App. 46.

Appeal from Municipal Court of Chicago; the Hon. CHARLES A. WILLIAMS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1920. Reversed with judgment here for $1,736.63 with interest. Opinion filed November 29, 1921.

URION, EARLY & URION and DAVID R. CLARKE, for appellant; HENRY K. URION, of counsel.

MCARDLE & MCARDLE, for appellee.

MR. JUSTICE MORRILL delivered the opinion of the court.

Action was brought to recover the purchase price of 100 barrels of plate beef alleged to have been sold by appellant's testate, who was then doing business in Philadelphia, Pennsylvania, under the name of Roesch Packing Company. Appellee was a broker in provisions, doing business in Chicago under the name of W. L. Gregson & Company. A trial before the court without a jury and solely upon the testimony of appellant's witnesses resulted in a finding and judgment for the defendant, from which an appeal has been prayed and allowed.

The statement of claim sets forth that on or about May 31, 1916, defendant, through one F. C. Reed, agreed to purchase from said George J. Roesch, 100 barrels of family plate beef at the price of $17 per barrel f. o. b. Philadelphia, and thereafter, to evidence said agreement, signed and delivered a memorandum of purchase, a copy of which is attached to the statement of claim. This document is dated at Chicago, Illinois, May 31, 1916, addressed to F. C. Reed at Philadelphia and signed by defendant. In express terms it confirms the purchase from the Roesch Packing Company at the price above stated and specifies the amount and character of the merchandise, which is to be "Strictly new cure; strictly choice quality, new cooperage; heavily salted; proper saltage allowance, packed suitably for export, for arrival at New

York not later than June 19th." It also provides that the shipment is to be accompanied by government certificates and declaration; that the route is to be included in shipping instructions, which are to be furnished by defendant at a later date.

The statement of claim further alleges that the said Roesch, in compliance with said contract of sale, immediately set apart and appropriated as the property of defendant 100 barrels of family plate beef which complied with the specifications of the contract of purchase except in one particular which is explained in a subsequent allegation; that on June 15, 1916, plaintiff received shipping instructions, copies of which are attached. These instructions direct shipment by the Pennsylvania Railroad Company, or any other good line, on or about June 15, and request that the railroad have copies of bill of lading in New York on June 19. These instructions are dated June 10, 1916, and were accompanied by copies of certain documents indicating that the goods were to be consigned to the Government Food Commission of Norway at Christiania, Norway, in care of Norwegian American Steamship Company. By a correction of these instructions on June 12, 1916, it was directed that the consignee should be Kristiania Food Commission, Christiania, Norway, instead of Government Food Commission of Norway. Plaintiff avers that thereafter it offered the said goods for shipment to the Pennsylvania Railroad Company and the freight agent refused to receive the same except for transportation to New York City upon the ground that through shipment to the foreign port could not then be made by it and that the shipment was made by plaintiff with the knowledge and acquiescence of defendant via the Pennsylvania Railroad to the consignee named in care of the Norwegian American Line at New York City and that plaintiff paid the freight charges amounting to the sum of $36.63 and the Pennsylvania Railroad Com-

Commonwealth Title Ins. & Trust Co. v. Gregson, 223 Ill. App. 46.

pany undertook and agreed that the shipment would be delivered to the Norwegian American Line at New York City not later than June 19 and in time to connect with the steamer "Bergensford" of that line sailing June 24, all of which arrangements were made with the knowledge of defendant, who acquiesced therein. Plaintiff further avers that the beef was never delivered to the Norwegian American Line at New York City, but on the contrary was lost by the Pennsylvania Railroad Company. The declaration further alleges that the 100 barrels of beef were not all strictly new cure, the greater part thereof being strictly new cure and the remainder at the time of sale having been packed two or three months and that after making the said contract of said sale and before the delivery and shipment of the beef, defendant was notified of the fact that all of said beef was not strictly new cure and that defendant failed to object to the acceptance, delivery and shipment of said beef and waived the terms of the specifications in that behalf. Plaintiff claims that by reason of the transaction above set forth defendant became indebted to the said George J. Roesch in the sum of $1,700 for said merchandise, together with the sum of $36.63 freight charges advanced upon the shipment, with interest at the rate of 5 per cent per annum from June 15, 1916, which defendant refused to pay.

The affidavit of merits admits the making of the contract as alleged and the shipment of the merchandise by the Pennsylvania Railroad, but denies that F. C. Reed was the agent of defendant and alleges that he was acting as the agent for said Roesch in the transaction. It also denies that said Roesch had secured a government certificate and export declarations of said beef and denies the waiver of any of the specifications set forth in the contract of purchase, and alleges that the said Roesch did not at any time secure a through export bill of lading of said beef to

Christiania, Norway, and never delivered or tendered such a bill of lading to the defendant; that the merchandise never reached the Kristiania Food Commission, the consignee thereof; that on June 6, 1916, and prior to the furnishing of the shipping instructions, defendant applied to said Roesch for a through export bill of lading and demanded that he prepay the freight through to Christiania, Norway, via the American Line steamer "Bergensford," sailing June 24, 1916, which said Roesch then and there undertook and promised to do. The affidavit further alleges that the said Roesch, regardless of his duty in the premises, failed to comply with the terms of his undertaking in the premises in the following respects, namely:

That he did not ship said beef to Pier No. 4, Bush Docks, Brooklyn, New York; that the beef was not in New York on June 19, 1916; that he did not ship the said beef to the Kristiania Food Commission of Norway; did not prepay the freight on the beef through to Christiania, Norway; did not take out a through export bill of lading; did not draw on the defendant with through bill of lading invoice and other papers attached and that the beef did not reach the consignee, but, as alleged in the statement of claim, was lost, and further alleges that on June 29, 1916, the said Roesch and the defendant mutually agreed to and did cancel the contract for the sale of 100 barrels of beef.

From statements contained in the record on behalf of defendant, we conclude that his defense to the claim is based upon the failure of the said Roesch to take out an export bill of lading through to Christiania, Norway, and to pay the freight to that point. All other matters set forth in the affidavit of merits were waived upon the trial. No evidence on behalf of the defendant was offered or received at the trial.

It is contended by appellant that the title to the goods passed upon the segregation thereof, which was accomplished by the inspection, repacking and marking of them, after which the seller awaited shipping

Commonwealth Title Ins. & Trust Co. v. Gregson, 223 Ill. App. 46.

instructions from the buyer, or that in any event the title passed when the goods were delivered to the railroad company, notwithstanding the refusal of the latter to issue an export bill of lading. Appellee contends that the shipping instructions constituted a part of the contract of purchase and that title to the goods did not pass to the buyer until an export bill of lading had been furnished by the seller and the freight prepaid by him to the final destination of the goods, which was Christiania, Norway. It follows that the determination of the issue thus presented is the vital question in the controversy.

The evidence shows that the goods were purchased f. o. b. at Philadelphia and were to be held at that place pending the receipt of shipping instructions. These instructions were sent by defendant to F. C. Reed in Philadelphia, who appears to have been the agent of defendant in the matter and were contained in letters from the defendant and its principal, which among other things directed that the through export bill of lading be obtained and freight charges to final destination be prepaid by the seller and laid special stress upon the requirement that the goods must be in New York on the morning of June 19, 1916, in time for a certain contemplated sailing. This would make it necessary for the goods to leave Philadelphia on the 15th. These instructions were the subject of numerous letters and telegrams between the parties and did not reach the seller in a final form, so far as the name and address of the consignee is concerned, until June 14. The evidence further shows that the seller delivered the goods to the Pennsylvania Railroad Company as instructed and requested from it a through export bill of lading, which was refused. Thereupon the seller took a domestic bill of lading providing for the transportation of the goods to New York. Defendant was advised of this action but made no objections thereto and accepted the domestic bill of lading.

The negotiations between the parties began with a

telegraphic offer from the seller proposing to sell the goods at $17 per barrel f. o. b. Philadelphia. This offer was accepted by the buyer, thereby completing the contract which was subsequently confirmed by mail. We find no undertaking on behalf of the seller either to furnish a through export bill of lading or to prepay freight charges. Under these circumstances we are of the opinion that the title to the goods passed upon their segregation and delivery to the Pennsylvania Railroad Company at Philadelphia. Title passes from vendor to vendee when nothing further remains to be done by the former under the contract of sale. *Michigan Cent. R. Co. v. Phillips,* 60 Ill. 190. There was a delivery of the goods to the carrier which must be held sufficient to pass the title in the absence of any conditions which would cause an exception to the general rule. Rev. St. ch. 121a, sec. 46, ¶ 1 (Cahill's Ill. St. ch. 121a, ¶ 49, subd. 1); *Foster Drug Co. v. Zeller & Sons Co.,* 191 Ill. App. 508. Under the Uniform Sales Act it becomes the duty of the seller to make such contract with the carrier on behalf of the buyer "as may be reasonable, having regard to the nature of the goods and *the other circumstances of the case.*" Rev. St. ch. 121a, sec. 46, ¶ 2 (Cahill's Ill. St. ch. 121a, ¶ 49, subd. 2). The final shipping instructions did not reach the seller until June 14. The defendant insisted that the goods must be shipped from Philadelphia not later than the 15th. The railroad company refused to issue a through export bill of lading. It was imperative under defendant's instructions that the goods be shipped on the 15th, so as to reach New York on the 19th. This could not be accomplished except by shipping under a domestic bill of lading, which was done by the seller, acting on behalf of the buyer. This was reasonable exercise of the discretion necessarily vested in the seller under the circumstances. *Stafford v. Walter,* 67 Ill. 83. The purchaser was notified of these facts and made no objection, thereby acquiescing in the arrange-

ment. Consequently the failure to take out a through export bill of lading cannot now be urged by defendant as a ground for denying that the title to the goods passed upon their delivery to the carrier. *Rabinowitz v. Hall*, 123 Ill. App. 65; *Keswick v. Rafter*, 35 N. Y. App. Div. 508, 54 N. Y. Supp. 850. We are of the opinion that the inability and consequent failure of the vendor to furnish a through bill of lading does not preclude the plaintiff from a recovery in this case.

The judgment of the municipal court is reversed and judgment is entered here for $1,736.63, being the amount of the purchase price of the goods in question and the freight charges prepaid by the seller, together with interest thereon at the rate of 5 per cent per annum from June 15, 1916.

*Reversed with judgment here for $1,736.63 with interest.*

GRIDLEY, P. J., and BARNES, J., concur.